**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**COUNTY OF ULSTER et al.,**

                    **Plaintiffs,**

              **v.**

**ALLIANCE OF NONPROFITS FOR**
**INSURANCE RISK RETENTION**
**GROUP et al.,**

                    **Defendants.**

_____

                                        **1:21-cv-524**
                                        **(GLS/DJS)**

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Congdon Flaherty O'Callaghan          RICHARD JOHN NICOLELLO,
Reid Donlon Travis & Fishlinger       ESQ.
333 Earle Ovington Blvd.
Uniondale, NY 11553

**FOR THE DEFENDANTS:**
_Alliance of Nonprofits for Insurance_
_Risk Retention Group_
Bennett, Bricklin & Saltzburg LLC     JOSEPH DeDONATO, ESQ
40 Wall Street - Suite 1002           MARK T. HALL, ESQ.
New York, NY 10005

_Jewish Family Services of Ulster_
_County, Inc. & Joyce A. Northacker_   NO APPEARANCE

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs County of Ulster, New York State Local Government Services Foundation, Inc., and New York Municipal Insurance Reciprocal (NYMIR) commenced this action against defendants Alliance of Nonprofits for Insurance Risk Retention Group (ANI), Jewish Family Services of Ulster County, Inc. (JFS), and Joyce A. Northacker[1] seeking a declaratory judgment that an insurance policy issued by ANI provides certain coverage.  (Compl., Dkt. No. 2.)  Defendant ANI brought counter-claims seeking a declaratory judgment that the same insurance policy does not provide such coverage.  (Dkt. No. 6.)  Now pending before the court are plaintiffs' motion for summary judgment, (Dkt. No. 23), and ANI's motion for summary judgment, (Dkt. No. 22).  For the reasons that follow, plaintiffs' motion is granted and ANI's motion is denied.

### II. Background

**A.    Facts**[2]

_____

[1]  JFS and Northacker have not appeared in this action and plaintiffs have not sought a Clerk's certificate of entry of default against them.  *See* N.D.N.Y. L.R. 55.1.

[2]  Unless otherwise noted, the facts are not in dispute.

2

Northacker commenced actions against the Estate of Barbara Hyde, JFS, and the County in New York State Supreme Court in Ulster County (hereinafter "the Underlying Actions").  (Pls.' Statement of Material Facts (Pls.' SMF), ¶ 1, Dkt. No. 23, Attach. 2.)  In the Underlying Actions, Northacker seeks to recover for injuries sustained in an automobile accident on January 8, 2018, which involved a vehicle owned and operated by Barbara Hyde (hereinafter "the Accident").[3]  (*Id.* ¶ 2.)  "The complaints in the Underlying Actions allege that . . . Hyde was working for and at the direction of JFS and the County, operated the vehicle with the permission of JFS and the County and was performing duties and services at the direction, under the auspices and on behalf of JFS and the County."  (*Id.* ¶ 4.)  JFS and the County entered into an Agreement for Professional Services, initially effective June 1, 2015 to December 31, 2016, and later extended by amendment to December 31, 2017.  (*Id.* ¶ 5.)  JFS and the County then entered into a successive Agreement for Professional Services, effective January 1, 2018 to December 31, 2018 (hereinafter, in conjunction with the Agreement for Professional Services effective until

_____

[3]  The parties' statements of material facts reference different dates as the date of the accident, (Pls.' SMF ¶ 2; ANI's SMF ¶ 1), but the complaints in the Underlying Actions indicate that the Accident occurred on January 8, 2018, (Dkt. No. 23, Attach 9 at 1).

December 31, 2017, "the Agreements"). (*Id.* ¶ 6.)

Under the Agreements, JFS assumed certain responsibilities and agreed to administer a senior transportation program in collaboration with the County (hereinafter "the Program"). (*Id.* ¶ 7.)[4] JFS' responsibilities pursuant to the Agreements included, among other things, ensuring that volunteers possessed a current, valid, and "clean" New York State driver's license; verifying that volunteer drivers were covered by insurance; providing training for volunteer drivers; and maintaining insurance, including commercial general liability insurance and automobile liability insurance. (*Id.* ¶¶ 9, 11-13; Dkt. No. 23, Attach. 15 at 14-20.) The County paid JFS a fee for its services and JFS agreed to bill the County monthly for reimbursement for volunteer mileage and insurance costs. (Pls.' SMF ¶¶ 14-15; Dkt. No. 23, Attach. 15 at 17.) In accordance with the Agreements, JFS paid volunteers—including Hyde—for their mileage and was reimbursed by the County. (Pls.' SMF ¶¶ 17-18.)

---

[4] ANI attempts to deny paragraphs seven through sixteen of plaintiffs' statement of material facts. (Dkt. No. 26 ¶¶ 7-16.) However, ANI's attempted denials rely on parol evidence outside of the terms of the Agreements and, for the reasons discussed in more detail below, *see infra* Part IV.A, parol evidence is inadmissible to interpret the Agreements because they are unambiguous and ANI's contention that the Agreements were abandoned fails as a matter of law. Therefore, paragraphs seven through sixteen of plaintiffs' statement of material facts, which are based solely on the unambiguous language of the Agreements, are deemed admitted.

In the Underlying Actions, Hyde's personal automobile insurance policy, issued by GEICO Insurance Company, in the amount of $300,000, provides primary insurance coverage for the defense of the County.  (ANI's SMF ¶ 49, Dkt. No. 27, Attach, 2.)  ANI issued Policy No. 2017-44189 to JFS, which included a Business Auto Coverage Part, and had effective coverage dates for the period of June 1, 2017 to June 1, 2018, capturing the date of the Accident (hereinafter "ANI Policy").  (*Id.* ¶¶ 50-52.)  The ANI Policy had a $1,000,000 limit, the same limit that JFS was required to maintain in automobile liability insurance under the Agreements.  (ANI Policy at 15, Dkt. No. 23, Attach. 21[5]; Dkt. No. 23, Attach. 15 at 20.)  The County was insured for automobile liability under Policy No. MCAULST001, issued by NYMIR, with a $1,000,000 limit (hereinafter "NYMIR Policy").  (ANI's SMF ¶¶ 60-61.)

The ANI Policy issued to JFS contained the "Social Services – Volunteers As Insured" endorsement, which included as an "insured": "Anyone volunteering services to you as an 'insured' while using a covered 'auto' you don't own, hire or borrow to transport your clients or other

---

[5] Citations to "ANI Policy" are to the pagination generated by CM/ECF, the court's electronic filing system.

persons in activities necessary to your business."  (Pls.' SMF ¶ 23.)  The

ANI Policy's "Who is An Insured" provision included as an "insured" the

following: "Anyone liable for the conduct of an "insured" described above

but only to the extent of that liability."  (*Id.* ¶ 24.)  And the ANI Policy

provides primary coverage for liability assumed under an "insured

contract," as defined therein.  (*Id.* ¶ 25.)  As for the NYMIR Policy's

coverage, it provides that it is excess over any other collectible insurance

for covered "auto[s]" that the County does not own.  (*Id.* ¶ 26.)

**B.   Procedural History**

Plaintiffs commenced this action in New York State Supreme Court in

Ulster County seeking additional insurance coverage through ANI in

connection with the Accident.  (Compl., Dkt. No. 2)  Specifically, plaintiffs

seek a declaration that:

> (1) at the time of the injury Hyde was acting within the
> course and scope of her status as a volunteer with
> JFS; (2) that Hyde is an insured under the ANI Policy
> in connection with the [Underlying Actions]; (3) that if
> a judgment or settlement in the [Underlying Actions]
> exceeds the limits of the GEICO personal auto policy
> issued to Hyde, ANI is obligated to contribute towards
> the third layer of indemnity coverage together with the
> NYMIR [Policy]; and [(4)] that the contribution as
> between the [ANI Policy] and the NYMIR [Policy] is to
> be ratably shared by proportion on a 50/50 basis . . .

.

> [And,] if the [County] is successful in its cross-claim for contractual indemnification, the ANI [Policy] provides primary coverage and must solely provide the second layer of coverage up to its policy limits without contribution from NYMIR.[6]

(*Id.* ¶ 55.)  Defendants removed the action to this court, answered, and asserted counter claims seeking a declaratory judgment that "ANI is not obligated to defend or indemnify the plaintiffs, or to pay any judgment, settlement, verdict or other award in [the Underlying Actions]."  (Dkt No. 1; Dkt. No. 6 ¶¶ 14-27.)  Now pending before the court are motions for summary judgment filed by plaintiffs and ANI.  (Dkt. Nos. 22, 23.)

## C.   Supplemental Briefing

One of the Underlying Actions, (N.Y. Index No. EF2019-568), brought for the purpose of determining liability as between the County and JFS, was submitted to binding arbitration.  (Dkt. No. 30 at 1.)  The arbitrator determined that the County was 100% liable and that JFS was not liable, did not owe common law indemnification to the County, and did not breach the Agreements with respect to the performance of services by its agents.

---

[6]  Plaintiffs request declaratory relief different from this in their motion for summary judgment; this issue is addressed below, *see infra* Part IV.E.

(*Id.* at 2; Dkt. No. 30, Attach. 2.)

Upon a letter motion by ANI, (Dkt. No. 30), the court ordered that ANI, the County, and any of the defendants who have yet to appear, submit supplemental briefing to address "the issue of whether the pending summary judgment motions are rendered moot and/or the arbitration award is dispositive of the issues therein," (Dkt. No. 31).[7]

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

### A.    The Agreements

Plaintiffs argue, in their motion for summary judgment, that Hyde was

---

[7]  The issue before this court of whether, under the terms of the Agreements and the ANI Policy, Hyde was a volunteer and, thereby, an "insured," was not directly at issue in the arbitration.  (Dkt. No. 30, Attach. 2.)  And there is no indication that an analysis of whether the Agreements and the ANI Policy are ambiguous was undertaken during the arbitration, nor that an analysis of the relevant clauses therein was conducted.  (*Id.*)  Crucially, the issue of contractual indemnification was explicitly not decided in the arbitration.  (*Id.*)  For these reasons, the arbitration award is not dispositive of the issues here and, as discussed further below, *see infra* Part IV, the unambiguous terms of the contracts speak for themselves.

acting as a volunteer for JFS and was an insured under the ANI Policy and, therefore, ANI must provide coverage in the Underlying Actions.  (Dkt. No. 23, Attach. 3 at 4-7.)  ANI, pointing to extrinsic evidence of a supposed course of dealing between JFS and the County, argues that the relationship did not proceed as described in the Agreements, that plaintiffs abandoned the Agreements, and that Hyde was not a volunteer of JFS, but of only the County.  (Dkt. No. 26, Attach. 1 at 2-8.)  Plaintiffs counter that ANI has not met its burden of showing the Agreements were abandoned and that, pursuant to the Agreements, Hyde was acting as a volunteer for JFS.  (Dkt. No. 29 at 2-5.)

It is well settled that "[t]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (applying New York law) (citation omitted).[8]  Under New York law, the determination of whether a contract is ambiguous is a question of law for the court to decide.  *See id.*  A contract is unambiguous if, on its face, it is reasonably susceptible to only one meaning.  *See Selective Ins. Co. of Am. v. County*

---

[8]  The Agreements are governed by the laws of the State of New York, and the court, therefore, applies New York law.  (Dkt. No. 23, Attach. 15 at 11.)

*of Rensselaer*, 26 N.Y.3d 649, 655 (2016) ("A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.") (internal quotation marks and citations omitted, alterations in original). When the terms of a contract are unambiguous, the intent of the parties must be found within the four corners of the contract, without reference to extrinsic materials. *See Goldman v. White Plains Ctr. for Nursing Care, LLC*, 11 N.Y.3d 173, 176 (2008); *Tomhannock, LLC v. Roustabout Res., LLC*, 33 N.Y.3d 1080, 1082 (2019) ("The best evidence of what parties to a written agreement intend is what they say in their writing.") (internal quotation marks and citation omitted).  As such, "a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Selective Ins. Co.*, 26 N.Y.3d at 655 (internal quotation marks and citation omitted).  And, extrinsic evidence cannot be used to create an ambiguity. *See Triple Diamond Cafe, Inc. v. Those Certain Underwriters at Lloyd's London*, 124 A.D.3d 763, 765 (2d Dep't 2015).

ANI's arguments rely on the testimony of Sharon Murray Cohen, JFS' executive director—extrinsic evidence outside the four corners of the

Agreements.  (Dkt. No. 26, Attach. 1 at 2-8.)  Specifically, ANI relies on

Cohen's testimony that JFS did not solicit, choose, train, supervise, or

have any personal contact with the Program's drivers, and that JFS' only

involvement in the Program was to facilitate the reimbursement of drivers

for their milage.  (*Id.* at 4-7.)  Therefore, ANI concludes, the drivers were

only volunteers of the County and not JFS.  (*Id.* at 5-7.)  On the other hand,

plaintiffs rely, mostly, on the provisions of the Agreements themselves to

determine the obligations of the parties.  (Dkt. No. 23, Attach. 3 at 4-7.)

The Agreements are unambiguous, as the language therein has

"definite and precise meaning, unattended by the danger of misconception"

and the relevant provisions are not capable of more than one reasonable

interpretation.  *Selective Ins. Co.*, 26 N.Y.3d at 655 (citation omitted).

Every iteration of the Agreements, including the most recent which was

effective January 1, 2018, contain Schedules A, B and C, which describe

the scope of services to be provided by JFS, fees to be paid to JFS, and

insurance requirements for JFS and the County.  (Dkt. No. 23, Attach. 14

at 14-21; Dkt. No 23, Attach. 15 at 14-20.)  Under the clear terms of the

Agreements, JFS assumed responsibility over the Program, including to

"ensure that [v]olunteers possess a current, valid, and clean New York

State driver's license," provide training for volunteer drivers, and work in tandem with the County and other organizations to recruit volunteers.  (Dkt. No. 23, Attach. 15 at 14-15.)  The Agreements also explicitly refer to the drivers that participate in the Program, such as Hyde, as "[JFS'] volunteer drivers" and "[JFS'] volunteers."  (*Id.* at 14.)  JFS accepted a fee for the services it rendered pursuant to the Agreements and was required to maintain Automobile Liability Insurance in the amount of $1,000,000 with coverage for non-owned automobiles.  (*Id.* at 17-20.)  Indeed, JFS was even to be "reimbursed for the cost of insuring the volunteer drivers."  (*Id.* at 17.)  It is, for these reasons, clear from the unambiguous terms of the Agreements that volunteer drivers participating in the Program by providing transportation to senior citizens, such as Hyde, were volunteers of JFS.[9]

As for ANI's argument that the Agreements were abandoned,  "[a] contract will be treated as abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior."  *EMF Gen. Contracting Corp. v. Bisbee*, 6

---

[9]  The court may only take extrinsic evidence, such as Cohen's testimony, into consideration if it determines the Agreements are ambiguous.  *See Revson*, 221 F.3d at 66.  As the court has found the Agreements to be unambiguous and Cohen's testimony does nothing more than attempt to create ambiguities in the otherwise unambiguous Agreements, the court cannot, and does not, consider it.  *See Triple Diamond Cafe, Inc.*, 124 A.D.3d at 765.

A.D.3d 45, 49 (1st Dep't 2004) (quoting *Savitsky v. Sukenik*, 240 A.D.2d 557, 559 (2d Dep't 1997)).  Under New York law, a party wishing to establish abandonment of a contract by conduct must show "'that the conduct is mutual, positive, unequivocal, and inconsistent with the intent to be bound.'"  *Id.* (citation omitted); *see Armour & Co. v. Celic*, 294 F.2d 432 (2d Cir. 1961) ("The termination of a contract is not presumed, and the burden of establishing it rests upon the party who asserts it.") (citation omitted).  Therefore, a finding of abandonment is generally "based upon clear, affirmative conduct by at least one of the parties that is entirely at odds with the contract."  *EMF Gen. Contracting Corp.*, 6 A.D.3d at 49.

ANI has not met its burden.  The record shows that JFS accepted fees for administration of the Program and maintained insurances as required by the Agreements.  (Pls.' SMF ¶¶ 7-16.)  And, not only did JFS accept fees for services pursuant to the Agreements, the parties entered into two amendments that extended the term of the Agreements and increased the fees, and then fully renewed JFS' administration of the program in 2018.  (Dkt. No. 23, Attachs. 14, 15.)  This conduct by JFS and the County was unequivocally consistent with the intent to be further bound

13

by the Agreements.

Therefore, the Agreements being unambiguous and un-abandoned,

the language therein expresses the intent that drivers participating in the

Program, including Hyde, were acting as volunteers of JFS.[10]

## B.    The ANI Policy[11]

Having decided that Hyde was a volunteer of JFS, the next

determination to be made is whether she, and, by extension, the County,

were covered by the ANI Policy.  Plaintiffs, in their motion for summary

judgment, argue that Hyde was covered by the ANI Policy because she

was a volunteer of JFS and that ANI improperly denied coverage.  (Dkt.

---

[10]  The court need not reach, however, the question of whether Hyde was also a volunteer of the County, as a determination to that effect is not necessary to render a decision here.

[11]  The ANI Policy does not appear to contain a choice-of-law clause.  However, the parties ostensibly operate under the assumption that New York law applies, as they rely solely on New York law in their memoranda.  The insured, JFS, is located in New York State, as were all the parties to this action, and a review of the record indicates that it was commonly understood that the principal location of the insured risk—liability arising during the operation of the Program in Ulster County—was the State of New York.  *See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 21-22 (1st Dep't 2006), *aff'd*, 9 N.Y.3d 928 (2007) ("Under New York's 'center of gravity' or 'grouping of contacts' approach to choice-of-law questions in contract cases, we are required to apply the law of the state with the 'most significant relationship to the transaction and the parties' . . . .  This approach generally dictates that a contract of liability insurance be governed by the law of 'the state which the parties understood to be the principal location of the insured risk . . . unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties.'") (citations omitted).  Therefore, no other state appearing to have a more significant relationship to the transaction and the parties, New York law applies.

No. 23, Attach. 3 at 2-3.)  ANI contends that the vehicle driven by Hyde at the time of the accident (hereinafter "the Hyde Vehicle") was not covered by the ANI Policy.  (Dkt. No. 26, Attach. 1 at 9.)

Under New York law, insurance policies are interpreted according to general rules of contract interpretation.  *See Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012).  Courts must "'give effect to the intent of the parties as expressed in the clear language of their contract.'"  *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012) (citation omitted).  Accordingly, summary judgment on the meaning of an insurance policy is appropriate when the terms of a policy are unambiguous.  *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).  The parties do not argue that the ANI Policy is ambiguous and the court finds no ambiguities.[12]

The ANI Policy states: "[ANI] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to

---

[12]   Regardless, any ambiguities in the ANI Policy would be construed against its drafter, ANI.  *See Mostow v. State Farm Ins. Companies*, 88 N.Y.2d 321, 326 (1996)  ("[New York State Court of Appeals] precedent establishes that ambiguities in an insurance policy should be construed in favor of the insured and against the insurer, the drafter of the policy language . . . .") (citations omitted).

which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a ***covered 'auto.'***"  (ANI Policy at 118 (emphasis added).)  To that end, the ANI Policy contains a list of "covered autos"—vehicles covered by the policy—including, "Non-Owned Autos," which are defined as follows:

> ***Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business***.  This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

(ANI Policy at 117 (emphasis added).)  As for who qualifies as an "insured," the ANI Policy was amended by the endorsement CA 99 34 12 93, titled "Social Service Agencies – Volunteers as Insured," which expands the definition of "Who is Insured" as follows:

> The following is added to the [Liability Who Is Insured] provision:
>
> ***Anyone volunteering services to you is an "insured" while using a covered "auto" you don't own, hire or borrow to transport your clients or other persons in activities necessary to your business.***  Anyone else who furnishes that "auto" is also an "insured."

(*Id.* at 151 (emphasis added); ANI's SMF ¶ 55.)

Putting the pieces of this puzzle together, the ANI Policy covered, among other persons, anyone "volunteering services" to JFS while using a "covered auto," which includes vehicles not owned by JFS that are being used in connection with services provided by JFS.  And, applying the policy language to the facts of this case, Hyde was a volunteer of JFS, driving her personal vehicle, dispatched by the County to provide transportation to Northacker, in connection with the services provided by the Program.  That is, Hyde was an "insured," driving a covered "Non-Owned Auto" to carry out activities necessary to and connected with the Program—a situation precisely contemplated by the Agreements and the ANI Policy.  Therefore, under the terms of the ANI Policy, Hyde was an "insured."  And, accordingly, to the extent the County has been found liable for Hyde's conduct in the Underlying Actions, the County also qualifies as an "insured" under the terms of the ANI Policy.  (*See* ANI Policy at 119 (including as an "insured": "[a]nyone liable for the conduct of an 'insured' described above but only to the extent of that liability.").)

   1. *The Contractual Liability Exclusion*

17

There is an exclusion in the ANI Policy, whereby it does not cover "[l]iability assumed under any contract or agreement" (hereinafter, "the Exclusion"). (ANI Policy at 119.) Plaintiffs argue that the Exclusion does not apply because the Agreements are an "insured contract," which is an exception to the Exclusion, and that ANI has waived its right to rely on the Exclusion because it was not raised at the appropriate time. (Dkt. No 29 at 8-9; Dkt. No. 27 at 7-9.) ANI argues that the Agreements are not an "insured contract" and are, therefore, excepted from coverage under the ANI Policy. (Dkt. No. 26, Attach. 1 at 10.)

After an insurer meets the initial burden of establishing that an exclusion applies, the New York Court of Appeals has held that the burden then shifts to the insured to demonstrate an exception to that exclusion. *See Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 89 N.Y.2d 621, 634 (1997). ANI alleges in its counter claims and argues in its papers that the Exclusion bars coverage of Hyde and the County. (Dkt. No. 6 at ¶¶ 24-25; Dkt. No. 26, Attach. 1 at 10.) ANI has, therefore, met its burden of pleading and showing that the Exclusion is applicable because potential liability for Hyde's negligence is assumed under a contract, the

18

Agreements.  Accordingly, the burden shifts to plaintiffs.

To overcome the Exclusion, plaintiffs must show that an exception

applies. *See Northville Indus. Corp.*, 89 N.Y.2d at 634.  The Exclusion

happens to have a relevant exception; it "does not to apply to liability for

damages: ***[a]ssumed in a contract or agreement that is an 'insured***

***contract'*** provided the 'bodily injury' or 'property damage' occurs

subsequent to the execution of the contract or agreement."  (ANI Policy at

119 (emphasis added).)  The ANI Policy defines an "insured contract" as,

among other things:

> That part of any other contract or agreement pertaining to your business ***(including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization***.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(ANI Policy at 127 (emphasis added).)

Plaintiffs argue that the Agreements meet the definition of an

"insured contract" because it contains an indemnification provision.  (Dkt.

No. 29 at 6-7; Dkt. No. 27 at 7-9.)  The indemnification provision

19

referenced by plaintiffs states:

> Article 23 – Indemnification
>
> ***[JFS] agrees to defend, indemnify, and hold harmless the County***, including its officials, employees, and agents, ***against all claims, losses, damages, liabilities, costs, or expenses*** (including without limitation, reasonable attorney fees and costs of litigation and/or settlement), ***whether incurred as a result of a claim by a third party or any other person or entity, arising out of the Services performed by [JFS], its employees, representatives, subcontractors, assignees, or agents pursuant to this Agreement***, which the County, or its officials, employees, or agents may suffer by reason of any negligence, fault, act, or omission of [JFS], its employees, representatives, subcontractors, assignees, or agents.  [JFS] agrees to investigate, handle, respond to, provide defense for, and defend any such claims, demands, or suits at its sole expense, and agrees to bear all other costs and expenses related thereto, even if such claims, demands, or suits are groundless, false, or fraudulent.

(Dkt. No. 23, Attach. 15 at 9.)  Under the terms of the Agreements, JFS was required to indemnify the County for all damages, liabilities, costs, or expenses, arising out of the services provided by JFS by reason of JFS' negligence, fault, act or omission.  (*Id.*)  The indemnity required by the Agreements is clearly a "part of any other contract or agreement pertaining

to [JFS'] business (including an indemnification of a municipality in connection with work performed for a municipality)" under which JFS assumed the tort liability of the County.  (ANI Policy at 127.)  Therefore, plaintiffs have met their burden of establishing an exception: the Agreements meet the definition of an "insured contract" and are not exempted from coverage under the ANI Policy.[13]

## C.   **ANI's Remaining Arguments**

ANI makes a number of other arguments as to why the Agreements cannot qualify as an "insured contract" and the ANI Policy, therefore, would not apply to Hyde or the Hyde Vehicle.  (Dkt. No. 26, Attach. 1 at 9-14.)  These arguments fail for the reasons that follow.

First, ANI again argues that the Agreements were abandoned by the County.  (*Id.* at 10.)  For the reasons already discussed herein, *see supra* Part.IV.A, this argument fails.

Second, ANI argues that the definition of an "insured contract"

---

[13]   Moreover, under New York law, ANI waived its right to rely on the Exclusion if, as argued by plaintiffs, it failed to disclaim coverage on that basis in a timely manner.  *See Markevics v. Liberty Mut. Ins. Co.*, 97 N.Y.2d 646, 648-49 (2001) ("[A] timely disclaimer pursuant to Insurance Law § 3420(d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion.") (citation omitted); (Dkt. No. 29 at 8-9 (arguing that ANI failed to make a timely disclaimer).)

requires "the contract or agreement [to be made] prior to the 'bodily injury' or 'property damage,'" and that, because JFS signed the most recent iteration of the Agreements on January 8, 2018, the same day as the Accident, that plaintiffs have failed to prove the agreement was made prior. (Dkt. No. 26, Attach. 1 at 11.)  Plaintiffs respond that the term of the 2018 Agreement commenced January 1, 2018 and that the indemnification provision therein was part of a continuous contractual relationship between the parties, that began in 2015.  (Dkt. No. 29 at 6.)  The court agrees with plaintiffs.

Although the signature on behalf of JFS on the 2018 Agreement is dated January 8, 2018, the term of the Agreement began January 1, 2018, and the signature page expressly states "the Parties hereto have caused their duly authorized representatives to enter into this Agreement as of the dates set forth below, effective as of the beginning date set forth in Article 2 above"—the date set forth in Article 2 being January 1, 2018, (Dkt. No. 23, Attach. 15 at 1, 13).  The clause setting the term of the contract to begin on January 1 follows the manifest intent of the parties, as the term of the previous iteration of the Agreements expired on December 31, 2017

and the parties were continuing their relationship uninterrupted.  (Dkt. No. 23, Attach. 14 at 25.)  Article 23, the indemnification provision that qualifies as an "insured contract," was a part of the Agreements from the beginning of the relationship in 2015, and was never substantively altered in any iteration of or amendment to the Agreements.  (*compare* Dkt. No. 23, Attach. 14 at 8-9, *with* Dkt. No. 23, Attach. 15 at 9.)  And Article 37 of the Agreements, which is the same in each iteration, states that JFS' "obligations . . . assumed pursuant to . . . Article 23 (Indemnification) . . . shall survive completion of the Services and/or the expiration or termination of this Agreement." (Dkt. No. 23, Attach. 14 at 11-12.)  Therefore, even if there were a gap in the Agreements and the County was not entitled to indemnity from January 1 to January 8, 2018, the County would still be entitled to be indemnified for liability arising from JFS' services rendered on or before December 31, 2017—which included the obligation to vet and train volunteer drivers, such as Hyde.  (Dkt. No. 23, Attach.14 at 14-17.)  For these reasons, no reasonable fact finder could conclude that the parties had not come to an agreement to provide indemnification for the County in connection with the services provided by JFS before the date of

the Accident.

Third, ANI argues that the indemnity provision in the Agreements is unenforceable because JFS' "sole conduct in connection with the ride share program was to act as a conduit for money transfer from the County to the volunteer drivers."  (Dkt. No. 26, Attach. 1 at 12.)  For the reasons previously discussed, extrinsic evidence outside the Agreements, such as testimony regarding JFS and the County's conduct, cannot be considered. *See supra* Part IV.A.  And, as the liability at issue arose out of the services performed by JFS, in administering the Program pursuant to the Agreement, the indemnity provision is applicable here.[14]

Fourth, ANI argues that the Hyde vehicle was loaned to JFS and, therefore, the Agreement cannot qualify as an "insured contract."  (Dkt. No. 26, Attach. 1 at 13-14.)  Plaintiffs contend that Hyde was operating her vehicle as a volunteer in the Program and that no reasonable argument can be made that this arrangement constituted a loan of the vehicle.  (Dkt. No. 29 at 7.)  There is nothing in the record that indicates the Hyde Vehicle

---

[14]  As plaintiffs point out, it is not for this court to determine whether the County actually receives contractual indemnity in the Underlying Actions.  (Dkt. No. 29 at 6.)  Before this court is the issue of insurance coverage solely.

was loaned to JFS.  Indeed, ANI argued the opposite in support of its own

motion for summary judgment, when it contended that the Hyde Vehicle

was not covered because it was not a "Hired Auto," as it had not been

"leased, hired, rented or borrowed" by JFS.  (Dkt. No. 22, Attach. 2 at 3.)

ANI's argument, therefore, fails.

**D.**   **Primacy of the Policies**

The parties agree that Hyde's personal GEICO policy, with a limit of

$300,000, is the primary policy and is providing defense for the County in

the Underlying Actions.  (ANI's SMF ¶ 49.)  They disagree, though,

regarding whether the ANI Policy or the NYMIR Policy provides the second

layer of coverage.  Plaintiffs, in their motion for summary judgment, argue

that, upon comparison of the "other insurance" clauses of the ANI Policy

and NYMIR Policy, the ANI Policy expressly states that it is primary for any

liability assumed under an "insured contract."  (Dkt. No. 23, Attach. 3 at 8-

13.)  ANI argues that the ANI Policy cannot be primary because the

Agreements do not qualify as an "insured contract."  (Dkt. No. 26, Attach. 1

at 10-14.)

Under the settled law of New York State, "[w]here the same risk is

25

covered by two or more policies, each of which was sold to provide the same level of coverage[,] priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses."  *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 65 A.D.3d 12, 18, 31 (1st Dep't 2009) (citing *Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686-87 (1999)).  The parties do not dispute that the ANI and NYMIR Policies cover the same risk and, therefore, an analysis of their respective "other insurance" clauses will determine the primacy of the policies.

The NYMIR Policy contains the following language in its "other insurance" clause:

> 5.  OTHER INSURANCE
>
> > a. For any covered "auto" you own, this Coverage Form provides primary insurance. ***For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance*** . . . .
> >
> > d.  When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share.  Our share is the proportion that the Limit of Insurance of our Coverage Form bears

26

to the total of the limits of all the Coverage
Forms and policies covering on the same basis.

(NYMIR Policy at 12, Dkt. No. 23, Attach. 22 (emphasis added).)[15]

The ANI Policy contains an "other insurance" clause with similar

language, however it contains an extra paragraph which directs that the

ANI Policy is to be primary for any liability assumed under an "insured

contract":

5.  Other Insurance

a. For any covered "auto" you own, this
coverage form provides primary insurance.  For
any covered "auto" you don't own, the
insurance provided by this coverage form is
excess over any other collectible
insurance . . . .

c. *Regardless of the provisions of Paragraph
a. above, this coverage form's Liability
Coverage is primary for any liability
assumed under an "insured contract."*

d.  When this Coverage Form and any valid and
collectible insurance under any other Coverage
Form or policy covers on the same basis, either
excess or primary, we will pay only our share.
Our share is the proportion that the Limit of
Insurance of our Coverage Form bears to the

---

[15]  Citations to "NYMIR Policy" are to the pagination generated by CM/ECF, the court's
electronic filing system.

> total of the limits of all the Coverage Forms and
> policies covering on the same basis.

(ANI Policy at 125 (emphasis added).)

As discussed previously, the indemnity provision in the Agreements is an "insured contract" as defined by the ANI Policy. *See supra* Part IV.C. Accordingly, the ANI Policy provides primary coverage as between the two policies at issue here and the NYMIR Policy provides excess coverage.

## E.   <u>Declaratory Relief</u>

For all of the reasons above, plaintiffs' motion for summary judgment is granted and ANI's motion for summary judgment, which covers virtually identical arguments, is necessarily denied as moot. Therefore, the court has found that plaintiffs are entitled to the declaratory relief they have requested in their motion for summary judgment, however, plaintiffs requested slightly different relief in their complaint. In the complaint, plaintiffs request a declaration that:

> (1) at the time of the injury Hyde was acting within the
> course and scope of her status as a volunteer with
> JFS; (2) that Hyde is an insured under the ANI Policy
> in connection with the [Underlying Actions]; (3) that if
> a judgment or settlement in the [Underlying Actions]

28

exceeds the limits of the GEICO personal auto policy
issued to Hyde, ANI is obligated to contribute towards
the third layer of indemnity coverage together with the
NYMIR [Policy]; and [(4)] that the contribution as
between the [ANI Policy] and the NYMIR [Policy] is to
be ratably shared by proportion on a 50/50 basis . . .
.

[And,] if the [County] is successful in its cross-claim
for contractual indemnification, the ANI [Policy]
provides primary coverage and must solely provide
the second layer of coverage up to its policy limits
without contribution from NYMIR.

(Compl. ¶ 55.)  But, in their motion for summary judgment, plaintiffs

request a declaration that:

(1) the Estate of Barbara Hyde is entitled to coverage
under the automobile liability policy issued by the
defendant [ANI] to [JFS] in connection with the
[Underlying Actions]; (2) the County is also an
"insured" on the ANI [P]olicy to the extent it is held
liable for the alleged negligence of [Hyde]; (3) if a
judgment or settlement in the Underlying Actions
exceeds the limits of the GEICO personal auto policy
issued to [Hyde], the ANI [P]olicy is the next layer of
coverage and the [NYMIR Policy] is excess to the
GEICO and ANI policies; and (4) granting such further
and different relief as to this court may seem just and
proper.

(Dkt. No. 23, Attach. 1 at 17.)  Given the discrepancy, the court directs the

parties to do the following: (1) plaintiffs shall, within thirty (30) days of entry

29

of this Memorandum-Decision and Order, submit a proposed declaratory

judgment and, if plaintiffs' proposal is materially different from the

declaration requested in the complaint, provide legal support for why such

difference is permissible; and (2) ANI shall, within fourteen (14) days of

plaintiffs' submission, respond with a statement that it does not oppose the

language supplied by plaintiffs, or opposes it with its own proposed

declaratory judgment language and, if applicable, an opposition to

plaintiffs' legal support as to why relief different from that requested in the

complaint is permissible.

The court also directs that the parties keep any proposed submission

within the bounds of the findings of law herein, including: (1) Hyde was a

volunteer of JFS; (2) Hyde and the Hyde Vehicle were covered under the

ANI Policy; (3) the County is an "insured" as defined by the ANI Policy, to

the extent it is held liable for the alleged negligence of Hyde; (4) the ANI

Policy provides the second layer of coverage and is primary to the NYMIR

Policy; and (5) the NYMIR Policy provides excess coverage for any amount

exceeding the ANI Policy's limit.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment (Dkt. No. 23) is granted; and it is further

**ORDERED** that ANI's motion for summary judgment (Dkt. No. 22) is denied; and it is further

**ORDERED** that ANI's counter-claims (Dkt. No. 6 at 5-11) are dismissed; and it is further

**ORDERED** that plaintiffs shall, in writing, submit a proposed declaratory judgment and, if plaintiffs' proposal is materially different from the declaration requested in the complaint, include legal support for why such difference is permissible within thirty (30) days of the date of this Memorandum-Decision and Order; and it is further

**ORDERED** that ANI shall, in writing, respond with a statement that it does not oppose the language supplied by plaintiffs, or its own proposed declaratory judgment language and, if applicable, an opposition to plaintiffs' legal support as to why relief different from that requested in the complaint is permissible within fourteen (14) days of plaintiffs' submission; and it is further

**ORDERED** that plaintiffs file a status report within seven (7) days of entry of this Memorandum-Decision and Order regarding JFS and Northacker's failure to appear in this matter; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 9, 2024
Albany, New York

Gary L. Sharpe
U.S. District Judge